**UNITED STATES of America, Plaintiff,**

v.

**Arlene Elizabeth ROHDE, Defendant.**

**No. 2:97–CR–0200.**

United States District Court,
D. Utah,
Central Division.

Dec. 4, 1997.

Brooke C. Wells, Assistant United States Attorney, Salt Lake City, UT, for Plaintiff.

James D. Gilson and Stephen K. Christiansen of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, UT, for Defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on defendant's Motion to Dismiss the pending Indictment for perjury on the grounds that it seeks to put the defendant twice in jeopardy for the same offense in violation of the Fifth Amendment of the United States Constitution. Plaintiff was represented by Brooke C. Wells, Assistant United States Attorney, and defendant was represented by James D. Gilson and Stephen K. Christiansen of Van Cott, Bagley, Cornwall & McCarthy. After oral argument, the motions were taken under advisement. Being fully advised, the court now enters its Memorandum Decision and Order.

### FACTS

On February 14, 1997, defendant Arlene Elizabeth Rohde entered a plea of guilty to bank robbery in violation of 18 U.S.C. § 2113(a) and carrying a firearm during the course of the commission of a violent felony in violation of 18 U.S.C. § 924(c). Defendant's plea of guilty was accepted by U.S. District Judge Dee Benson after execution and filing of a Statement in Advance of Plea of Guilty. In that document defendant admitted having planned the bank robbery with Paul Bradford Jones and Tracy Linn Brown, that Jones "cased" the bank prior to the robbery, and that defendant Rohde carried a firearm provided by Jones and Brown during the course of the robbery. These facts were also admitted under oath orally, and defendant admitted as well that she carried the gun in her jacket pocket, that the gun was small and that she believed it to be loaded.

Prior to sentencing, defendant Rohde was subpoenaed and testified as a government witness at the trial of defendant Paul Bradford Jones in case No. 1:97–CR–006.[1] During the initial portion of her trial testimony, defendant Rohde reiterated the facts set forth above. However, during the second day of her testimony, defendant rescinded her earlier sworn testimony and testified that she had earlier lied to the court concerning her own criminal activities and the knowledge and participation of Jones. She then testified that Jones knew nothing of the bank robbery, that he did not provide any weapon, and that he only went into the bank to secure change and did not share in the proceeds of the robbery. She further testified that she did not carry a gun into the bank.

At her sentencing hearing on June 16, 1997, under a new Indictment in Case No. 95–CR–18B which had been filed after she was dismissed as a defendant in the original robbery Indictment, defendant Rohde admitted that she had changed her testimony in an effort to help Jones because she believed Jones should not be faced with a "Three–Strikes and You're Out" sentence. Judge Benson increased defendant's guideline range by two levels and enhanced the sentence for obstruction of justice "for lying on that witness stand."

On June 19, 1997, defendant Rohde was indicted in the instant case for perjury in violation of 18 U.S.C. § 1621.

The issue presented is whether the pending Indictment and prosecution of defendant Rohde for having committed perjury in the Jones robbery trial amounts to the same offense as the sentencing enhancement imposed at her sentencing hearing for lying on the witness stand, in violation of the Double Jeopardy Clause of the Fifth Amendment.

## ANALYSIS

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. Judge Benson enhanced Ms. Rohde's sentence imposed in her robbery Indictment case because of obstruction of justice under § 3C1.1 of the Federal Sentencing Guidelines for the commission of perjury. This section of the Guidelines provides:

> If the defendant *willfully* obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of *the instant offense*, increase the offense level by 2 levels. (Emphasis added).

The commission of perjury is an example of when this enhancement applies. *See* U.S.S.G. § 3C1.1, Application Notes Commentary, note 3(b) (1997).[2]

### *Sentencing Enhancements Under § 1B1.3 for Relevant Conduct*

Recently the Supreme Court considered the issue of whether later prosecution for conduct used as a basis for enhancement of a sentence under the "relevant conduct" provisions of § 1B1.3 of the Sentencing Guidelines violated the double jeopardy clause.[3] In

---

1. Co-defendant Brown had entered a plea of guilty to the Indictment. Defendant Rohde who was also charged in that original Indictment had been dismissed because of Speedy Trial Act violations.

2. Section 3(b) of the Commentary to § 3C1.1 states:
 > 3. The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies:
 >
 > (b) committing, suborning, or attempting to suborn perjury;

3. Section 1B1.3 states in relevant part:
 > (a) [Offense conduct and adjustments] shall be determined on the basis of the following:
 > (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
 > (B) in the case of a jointly undertaken criminal activity..., all reasonably foreseeable acts and omissions of others in the furtherance of the jointly undertaken activity;
 > that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;....
 > (b) .... Factors in Chapters Four [Criminal History and Criminal Livelihood] and Five [Determining the Sentence] that establish the guideline range shall be determined on the

*Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), defendant Witte had unknowingly arranged two drug shipments with an undercover agent of the Drug Enforcement Agency. The first involved a shipment of cocaine from Guatemala in August of 1990 and the second involved a shipment of marijuana in January of 1991. Witte was indicted solely on the marijuana transaction. He plead guilty to attempted possession of marijuana with intent to distribute. The statute provides that a sentence for such a crime involving 100 grams or more of marijuana must be between 5 and 40 years. The District Court concluded at the sentencing hearing that the 1990 cocaine importation offenses were part of the same "relevant conduct" under § 1B1.3 of the Guidelines, so the judge aggregated the quantities of drugs involved in the 1990 and 1991 episodes. Without the aggregation, if the sentencing judge had only considered the marijuana conviction, the Guidelines range would have been 78 to 97 months. When the cocaine offenses were considered in the calculation, the new Guideline range was 292 to 365 months,[4] which still falls within the statutorily authorized penalty of 5–40 years. The Supreme Court held that when operating within a statutory range, a resulting sentence within that range constitutes punishment only for the offense of conviction for purposes of double jeopardy analysis, stating:

> ... a particular offense should receive a more serious sentence *within the authorized range* if it was either *accompanied by or preceded by additional criminal activity.*

basis of the conduct and information specified in the respective guidelines.

4. *Id.* at 408, 115 S.Ct. at 2210.

5. In *Koonce,* the defendant was convicted in the U.S. District Court for the District of South Dakota of distributing 443 grams of methamphetamine by mailing a package containing the drugs to a prospective buyer in South Dakota. Federal agents had also found in defendant's Utah home 963 grams of methamphetamine and various firearms while executing a search pursuant to a warrant. At the sentencing hearing for the South Dakota offense, evidence of the Utah offense and other crimes was presented and the South Dakota district court sentenced defendant to 20 years in prison, the statutory maximum.

*Id.* at 403, 115 S.Ct. at 2208. (Emphasis added). The court then allowed the prosecution for the cocaine offense to go forward.

As further support for its holding, the court noted that § 5G1.3 of the Guidelines operates to mitigate the possibility of two separate prosecutions which would "grossly increase a defendant's sentence." *Id.* at 405, 115 S.Ct. at 2208–09. This section of the guidelines provides that if a defendant is serving an undischarged term "result[ing] from offense(s) that have been fully taken into account [as relevant conduct] in the determination of the offense level for the instant offense," then the "sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment." § 5G1.3.

The Supreme Court in *Witte* found no double jeopardy violation for a sentencing enhancement based upon relevant conduct under § 1B1.3, but did not address whether double jeopardy comes into play because of a sentencing enhancement under § 3C1.1 of the Guidelines. Unlike *Witte,* and *Koonce,* discussed *infra,* the issue before this court is whether double jeopardy protection attaches for a later prosecution of perjury, when the same perjury previously provided the basis for a sentence enhancement under § 3C1.1.

The government cites *United States v. Koonce,* 885 F.2d 720 (10th Cir.1989), for the proposition that a single crime can be the basis for both a sentence enhancement and later prosecution without offending the Double Jeopardy Clause.[5] However, the enhancement guideline in that case, § 1B1.4,[6]

The Tenth Circuit affirmed, holding that the sentence imposed in the District of South Dakota could be enhanced even though evidence concerning the commission of the same crime had already been used to prosecute defendant in the District of Utah. *Koonce,* 885 F.2d at 721–22. Judge McKay dissented in *Koonce,* arguing that the "hearing" conducted by the South Dakota District Court, in which it determined by a preponderance of the evidence that the defendant committed the offense in Utah, constituted a trial on the merits and that the later prosecution for the offense in the District of Utah violated Double Jeopardy protection. *Id.* at 722 (McKay, dissenting).

6. Although the *Koonce* opinion does not specify what section of the Sentencing Guidelines was

has to do with sentencing enhancements grounded in criminal history, relevant conduct, or recidivist information.

It is clear to this court that in *Witte,* and the prior precedent it relied upon, *Williams v. People of New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the conduct considered to enhance a sentence, which does not violate the double jeopardy clause, embodies conduct accompanying the crime or activity preceding the crime. *Witte,* 515 U.S. at 403, 115 S.Ct. at 2208. In *Williams,* the court determined under a due process analysis that it was appropriate for a sentencing judge to consider "information about the convicted *person's past life, health, habits, conduct, and mental and moral propensities.*" 337 U.S. at 245, 69 S.Ct. at 1082. (Emphasis added). Thus, presentence reports which take relevant conduct into consideration should be fashioned to make the punishment fit the offender and not merely the crime. Information concerning every aspect of a defendant's life is provided to allow for an appropriate sentence for that offender. *Id.* at 247–50, 69 S.Ct. at 1083–85. The fundamental reason that "relevant conduct" may enhance a sentence for the instant offense of conviction without violating the double jeopardy clause is that the punishment is only for the instant offense, and the relevant conduct renders the crime more severe due to repetition, aggravating circumstances or other factors indicating that the punishment for the instant offense should be increased. *Witte,* 515 U.S. at 400–01, 115 S.Ct. at 2206–07; *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct.

1256, 1258, 92 L.Ed. 1683 (1948); *Moore v. State of Missouri,* 159 U.S. 673, 677, 16 S.Ct. 179, 181, 40 L.Ed. 301 (1895).

### *Sentencing Enhancements Under § 3C1.1: Obstruction of Justice*

In contrast to the "relevant conduct" analysis in *Witte* and its predecessors having to do with additional criminal activities which precedes or accompanies the offense of conviction, enhancements under § 3C1.1 have to do with wilful conduct which impedes or obstructs the investigation, prosecution, or sentencing of *the offense of conviction.* Therefore, conduct which justifies an enhancement for obstruction of justice cannot be an aggravating circumstance in the commission of the crime of conviction, such as visible possession of a firearm in connection with a robbery. *See McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). Similarly, the recidivist analysis is not applicable to an enhancement under § 3C1.1. Recidivist statutes enhance sentences based on prior criminal conduct which is repeated in the instant offense, thus warranting a stiffer penalty for the latest crime. *Witte,* 515 U.S. at 400, 115 S.Ct. at 2206. Also, Section 4A1.1 of the Guidelines, which provides for greater punishment for those with criminal histories, would allow an enhancement under the *Witte* analysis. Similarly, § 1B1.4 of the Guidelines would allow the sentencing court to consider other information by way of enhancement about the background, character and conduct of the defendant, unless otherwise prohibited by law.[7] But those are not

cited for authority to consider the alleged Utah offense in sentencing, this court assumes that § 1B1.4 supported the court's decision. This section outlines the information which may be used in imposing a sentence:

> In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. See 18 U.S.C. § 3661.

The Commentary to § 1B1.4 articulates an example of information a court could use: "[I]f the defendant committed two robberies, but as part of a plea negotiation entered a guilty plea to only one, the robbery that was not taken into account by the guidelines would provide a reason for sentencing at the top of the guideline range."

U.S.S.G. § 1B1.4, Background Commentary (1997). This is essentially what happened in *Koonce,* where an alleged drug offense in Utah was used as a basis for sentencing defendant at the statutory maximum for the South Dakota Offense.

7. Some courts have used conduct at the sentencing hearing, such as the defendant shouting obscenities at the sentencing judge, to sentence defendant to the maximum under the Guidelines range. *See United States v. Blackman,* 66 F.3d 1572 (11th Cir.1995). However, in *Blackman,* the court sentenced defendant to the maximum sentence under the guidelines, and said that it was "imposing the sentence, not to punish Blackman for making the statements, but because Blackman's statements reflected his lack of remorse and refusal to accept responsibility for his acts." *Id.* at 1578. This sentence enhancement

enhancements which would come within the obstruction of justice analysis under § 3C1.1.

Unlike an enhancement for relevant conduct under § 1B1.3, the enhancement envisioned by section 3C1.1 of the Guidelines contains language of criminal culpability for the very act of obstruction itself, i.e., "If the defendant *willfully* obstructed or impeded...." (Emphasis added). Thus, the Second Circuit in *United States v. Stroud*, ruled that Section 3C1.1 contains a clear *mens rea* requirement that limits its scope to those who "willfully" obstruct justice, meaning those defendants who "consciously act with the purpose of obstructing justice." 893 F.2d 504, 507 (2d Cir.1990). In this regard, the Supreme Court in *United States v. Dunnigan*, determined that when a defendant perjures herself at her trial, and there is support for the court's finding of perjury, the sentencing guidelines require an enhancement of the sentence. 507 U.S. 87, 98, 113 S.Ct. 1111, 1118–19, 122 L.Ed.2d 445 (1993). The Supreme Court equated an enhancement based on perjury with a prosecution thereof, as well as the achievement of legitimate sentencing goals. The court said:

> A sentence enhancement based on perjury does deter false testimony in much the same way as a separate prosecution for perjury . But the enhancement is more than a mere *surrogate for a perjury prosecution*. It furthers legitimate sentencing goals relating to the principal crime, including the goals of retribution and incapacitation.

*Id.* at 97, 113 S.Ct. at 1118. (Emphasis added). Under *Dunnigan*, an enhanced sentence due to a defendant's perjury during her trial is both a surrogate for a perjury prosecution and a further incentive not to commit the principal crime. A specific finding of perjury acts as a separate trial because the Supreme Court imposed the requirement that when contested, the elements

of perjury must be found and articulated by the District Court with specificity. Therefore, the enhancement is far from automatic. *Id.* at 98, 113 S.Ct. at 1118. In this regard, the Supreme Court said:

> [A] district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out. [citations omitted] When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding.

*Id.* at 95, 113 S.Ct. at 1117.

 In the case at bar, this court considers that the requirement in *Dunnigan* of specific findings by the judge was not necessary because defendant Rohde admitted that she committed perjury, explaining her reasons for doing so in sufficient detail as to constitute the equivalent of specific findings. In substance, the court found wilfulness and the necessary mens rea that would support a surrogate trial for perjury, and imposed a sentence enhancement based upon that conduct.

In the present case, Judge Benson enhanced defendant Rohde's guideline range by two levels for the articulated reason that she "lied on that witness stand." There is no indication that the punishment aggravated or related to the bank robbery, the crime of conviction, or that it was being imposed as an enhancement of that crime. The enhancement was for lying on the witness stand at the Jones robbery trial.[8] The defendant admitted that she changed her testimony because she believed Jones should not be faced with a "Three–Strikes and You're Out" sentence. Her perjury indicates her willingness to lie to protect a partner in crime, but does not implicate a basis for enhancing the bank

---

conforms to the traditional enhancements discussed, supra, in that it is not punishment for the actual statements but reflects on the appropriate punishment for the offense of conviction based on the defendant's lack of remorse.

8. At sentencing, the court stated:
I am finding that there is a two point addition for obstruction of justice for lying on that wit-

ness stand. If you didn't lie on the witness stand that time, you lied before me when I took your plea. I am finished being mocked by you, Ms. Rohde. I know you feel sympathy for yourself today and I know you mean what you say, but you're being punished for what you did, not for how you feel today.
Transcript of June 20, 1997, Sentencing Hearing, page 29.

robbery· sentence. In this respect, the enhancement in effect became a "surrogate prosecution," and punishment was imposed for the perjury itself, wholly apart from the defendant's criminal conduct in the robbery.

### Obstruction of Justice Must Occur in Connection with the "Instant Offense"

Section 3C1.1 of the Guidelines requires that the enhancement be imposed for conduct which occurred during "the instant offense." Defendant contends that the enhancement imposed at her sentence in· the robbery Indictment did not have to do with her conduct in that case, but rather it had to do with "lying on that witness stand" in the Jones trial, a case involving a different Indictment naming her alone with a different case number. Thus, the perjury for which the enhancement was imposed did not occur during the "instant offense" for which the sentence was rendered. In *United States v. Perdomo,* 927 F.2d 111 (2d Cir.1991), the defendant pleaded guilty to conspiracy to distribute cocaine on July 22, 1988. The District Court Judge enhanced his sentence by two levels for obstruction of justice under § 3C1.1 based upon five instances outlined in the presentence report. The Second Circuit vacated the two point enhancement because the District Court Judge relied on the findings of the presentence report, which itself relied on *conduct beyond the charged offense. Id.* at 117–18. The court held that obstruction of justice must relate to conduct charged in the "instant" offence. As in *Perdomo,* the requirement of Guideline 3C1.1 that the obstruction of justice must occur in "the instant offense" literally doesn't fit here, because the perjury occurred at the Jones' robbery trial, while the enhancement was imposed at the sentencing of Rohde in the separately charged Indictment. Under *Perdomo,* this may require vacation of the sentencing enhancement. Even so, the court's determina-

tion of wilful perjury under § 3C1.1 of the Guidelines amounted· to a proceeding in which defendant was placed in jeopardy: jeopardy for the same offense for which she is now being prosecuted.

### Standard of Review—Preponderance of the Evidence as Basis for Double Jeopardy

◼ In making sentencing determinations and applying the guidelines to the facts of any individual case, the Commission recommends and courts have been applying the preponderance of the evidence standard without offending due process. *See* § 6A1.3, Commentary; *United States v. Watts,* 519 U.S. 148, ——, 117 S.Ct. 633, 637, 136 L.Ed.2d 554 (1997); *United States v. Knox,* 112 F.3d 802, 813 (5th Cir.1997)(To make findings pursuant to the Sentencing Guidelines,· a district court only need be convinced by a preponderance of the evidence.). The Supreme Court has approved such a lower standard of proof for sentencing enhancements. *Witte,* 515 U.S. at 401, 115 S.Ct. at 2207; *McMillan,* 477 U.S. ·at 84, 106 S.Ct. at 2415. In these cases, as in the sentencing guidelines, the preponderance of evidence standard allows facts to be found by the court which are used as enhancers for punishment of the instant offense of conviction.[9]

In *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court held that a later civil sanction, determined under the civil standard of preponderance of the evidence, triggers double jeopardy protection in cases where the sanction amounts to punishment. In that case, defendant Halper was convicted of submitting 65 false claims for Government reimbursement in violation of the federal criminal false-claims statute, and was sentenced to prison and fined $5,000. The government's actual loss plus costs in investigating and prosecuting the false claims amounted to no

---

**9.** Circuit courts, including the Tenth Circuit, have approved the preponderance of the evidence standard for facts underlying sentencing. *United States v. Segien,* 114 F.3d 1014, 1021 (10th Cir.1997); *United States v. Cruz,* 58 F.3d 550, 555 (10th Cir.1995). Where a sentence enhancement is dramatic, the Tenth Circuit has hinted through dicta that a higher standard of proof may be required. *United States v. St. Julian,* 922 F.2d 563, 569 n. 1 (10th Cir.1990), *cert.*

*denied,* 506 U.S. 925, 113 S.Ct. 348, 121 L.Ed.2d 263 (1992)·("If the difference between the guideline sentence and the departure sentence is great," the court should consider the disparity in determining the appropriate standard of proof for sentencing facts) (citing *McMillan v. Pennsylvania,* 477 U.S. 79, 91–92, 106 S.Ct. 2411, 2418–19, 91 L.Ed.2d 67 (1986) and· *United States v. Kikumura,* 918 F.2d 1084 (3d Cir.1990)).

more than $16,000. The government then brought a civil suit against him under the federal civil False Claims Act. Under the terms of the Act, defendant Halper would have been liable for $130,000, $2,000 on each of the 65 false claims, $130,000. Because the civil liability of $130,000, found under the civil standard of preponderance of the evidence, could not be said solely to be remedial since the government's monetary damages only amounted to $16,000, the Court held that the Double Jeopardy Clause was violated. The court found this to be so because the defendant was subjected to a civil sanction not fairly characterized as remedial, but only as a deterrent or retribution. *Id.* at 448–49, 109 S.Ct. at 1902; *see also Department of Revenue of Montana v. Kurth Ranch, et al.,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); *Witte,* 515 U.S. at 413, 115 S.Ct. at 2213 (Justice Stevens, Dissenting).

The sentence enhancement for perjury serves as a deterrence for perjury in much the same was as a separate prosecution. *See Dunnigan,* 507 U.S. at 97, 113 S.Ct. at 1118. The perjury enhancement to defendant Rohde's sentence was applied as a deterrence and punishment for the perjury itself. In this respect, the sentencing hearing served as a surrogate trial, and although the standard of proof is only a preponderance of the evidence, a later criminal prosecution for the perjury violates the double jeopardy clause. In the case at bar, the sentencing court found wilfulness and the necessary mens rea that would support a surrogate trial for perjury, and imposed a sentence enhancement based upon that conduct.

### Double Jeopardy May Attach Even Though No Further Punishment by way of Additional Sentences is Imposed

█ In the present Indictment for perjury, the government does not seek to impose additional punishment beyond the increased sentence already imposed by way of enhancement for "lying on that witness stand." Furthermore, the government argues that under *Koonce,* the issue of double jeopardy would

not be ripe for review until defendant actually receives a punishment that was arguably multiple.[10] Under this reasoning, the issue could never be ripe for review in this case since the government represented to this court that if it achieves a conviction of defendant Rohde for perjury, no further punishment will be sought. A similar issue was addressed in *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), wherein the Supreme Court considered whether a felon possessing a firearm may be convicted of both receiving a firearm and for possession of the same firearm and concurrently sentenced for both convictions. The court held that while the government may seek a multiple count indictment for multiple violations involving the same weapon, the accused may not in effect be double sentenced for the same offense. Importantly for this case, the court said that a separate conviction—apart from the matter of punishment, even when imposed as a concurrent sentence—has

> potential adverse collateral consequences that cannot be ignored.... Moreover, a second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. [citations omitted]. Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

*Id.; see also Witte,* 515 U.S. at 415 n. 4, 115 S.Ct. at 2214 n. 4 (Justice Stevens, Dissenting).

In this case at bar, the government received essentially a first conviction and punishment for perjury through the sentence enhancement. It is now clear that the government intends in effect to obtain a further conviction on an Indictment for the same perjury. But since no further punishment by way of additional sentence will be sought, under the government's intended course of action, the defendant would be unable to challenge that violation of her constitutional right. Nevertheless, the net effect is that the defendant may be placed in double jeop-

---

10. In *Koonce,* the Tenth Circuit rejected defendant's argument that he was subject to multiple punishment for the same offense because he had

not yet received punishment from the district court that was arguably multiple. *Koonce,* 885 F.2d at 722.

ardy for the same offense without a remedy to challenge the constitutional violation. The plain meaning of the Double Jeopardy Clause is that it is violated when a defendant is placed in jeopardy for the "same offense," not when or whether punishment by way of additional sentences is imposed.

Since it is manifest that further prosecution will result in the defendant being placed twice in jeopardy for the same offense, under the circumstances presented in this case the pending perjury Indictment should be dismissed.

Based upon the foregoing, it is hereby

ORDERED, that defendant's Motion to Dismiss is GRANTED and the Indictment is dismissed.